## BULL DOG AUTO FIRE INS. ASS'N OF CHICAGO, ILL., v. JURESKI. (No. 7796.)

Court of Civil Appeals of Texas. San Antonio. June 8, 1927.

**1. Continuance ⬅️26(8)—Insurers held entitled to continuance to secure testimony of automobile owner in passenger's action against insurer and owner; plaintiff not divulging whereabouts.**

In passenger's action against owner and insurer of automobile while being used to transport passenger to bus depot, insurer's application for continuance to secure testimony of owner, reciting due diligence in attempting to procure owner and that plaintiff, knowing his whereabouts, had refused to divulge same to defendant, was sufficient as matter of law, and overruling of application was abuse of discretion requiring new trial.

**2. New trial ⬅️100—New trial for newly discovered testimony, which, if established, would relieve insurer of liability for injuries in automobile accident, held erroneously refused.**

In passenger's action against owner and insurer of automobile while being used to transport plaintiff to bus depot, motion for new trial for newly discovered evidence by driver of automobile not testifying at trial, showing that he was bystander calling for plaintiff to accommodate stranger to insurer and insured, and used car then owned by stranger to suit, which, if established, would relieve insurer of liability, *held* erroneously refused.

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Action by Ben Jureski, as next friend of May Jureski, minor, against the Bull Dog Auto Fire Insurance Association of Chicago, Ill., and another. Judgment for plaintiff, and defendant named appeals. Reversed and remanded.

Seeligson & Seeligson, of San Antonio, for appellant.

P. H. Long and Edwin Sehorn, all of San Antonio, for appellee.

SMITH, J. The Red Ball Bus Lines and the Union Bus Lines each maintains a station in San Antonio, on North Alamo street and West Travis street, respectively. Both concerns operate lines of motorbusses between San Antonio and various outside points. They are engaged exclusively in the transportation of intercity passengers, as distinguished from intracity traffic.

Miss May Jureski, a minor, is employed in the city of San Antonio, but her parental home is in Bandera, where she sometimes spends the week-end, usually making the trips via the Union Bus Lines. She planned to go to Bandera for such purpose on October 2, 1925, and about 2 o'clock in the afternoon called the Union Bus Station to arrange for the trip. She testified:

"I was a passenger in an automobile on the 2d day of October, 1925, and I became a passenger in that automobile because I was going home on a trip to Bandera to spend the week-end. I called the Union Bus Station, and asked for the Bandera driver, and told him I wanted to go to Bandera, and if he would call for me; he said, 'Yes;' and he sent a car to the house; and the fellow that came was a stranger to me and told him (me) that the Bandera driver was busy and had sent him for me."

On the way from the young lady's room to the bus station, the car in which she was riding collided with another car, and she was injured.

Subsequently this suit was brought by Miss Jureski, through her father as next friend, against F. C. Spease, alleged to be the owner of the car in which she was riding, and the Bull Dog Auto Fire Insurance Association of Chicago, Ill., alleged to have issued an insurance policy in favor of Spease for the benefit of persons injured while riding as passengers in said car. In a jury trial, after Spease was dismissed, Miss Jureski recovered judgment against the insurance association for $2,500, the maximum amount recoverable under the terms of the policy sued on. The association has appealed.

As stated by appellant, the jury found, in response to special issues:

That "the car in which May Jureski was riding at the time of the accident was the same car described in the policy of insurance issued to F. C. Spease by appellant; that the driver of the car was the agent of F. C. Spease at the time of the accident; that said driver was guilty of negligence which caused the accident complained of by appellee, and the ensuing injuries to May Jureski, and that $2,500, if paid now, would reasonably compensate May Jureski for such injuries."

It is not deemed necessary in this opinion to set out the facts of the case, except as they relate to the contentions of appellant that the court should have granted appellant's first application for continuance, or, in the alternative, its motion for new trial upon the ground of newly discovered evidence.

The insurance policy upon which recovery was had was issued by appellant to one F. C. Spease on August 26, 1925, to cover a Nash touring car bearing state license No. 51—081, and factory No. 57738, while operated by the insured as an interurban bus from 116 North Alamo street, San Antonio, which was the Red Ball Bus Station. The evidence in the case is deemed sufficient to support the finding of the jury that this was the car in which Miss Jureski was riding at the time she was injured. The evidence shows, or is uncontroverted, however, that Spease discontinued his bus service late in September, or a few days prior to this accident, and failed to pay the installment of premium due on the policy on September 26.

---

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

A few days later, on October 1, the Red Ball Bus Lines, under whose sponsorship Spease had been operating his bus, notified the insurance association that Spease had ceased to operate his bus, or at least that he was no longer operating in connection with the Red Ball Lines or out of its station. In consequence of this notice, and in pursuance of a provision of a city ordinance, the insurance association gave written notice to the mayor of the city of San Antonio of the cancellation of the Spease policy, giving as a reason for the cancellation that the insured automobile had been "withdrawn from service." This notice of cancellation was given in the forenoon of October 2, whereas, the accident in question occurred at 2:15 or 2:20 on the afternoon of the same day. The company had no notice of the accident, and its officials and agents never heard of it until this suit was filed, more than three months after it occurred. They have never seen nor heard from Spease since the policy was issued to him, and, although both appellee and appellant had made him a party defendant in their pleadings, he could not be reached by process, made no appearance, and was dismissed by appellee.

These facts, together with other related facts in the record, raise grave doubts of appellant's liability in this case. The record embraces no evidence showing that Spease, the insured, was operating this or any other vehicle at the time of the accident, or that he even owned this car, except as the fact may be inferred from the further fact that five or six weeks before the accident the policy was issued to Spease to cover a car bearing that state license number, and this inference is weakened by the fact that the state highway records of Bexar county showed that a car of the same description, and bearing the same license number but a different factory number, was issued to and still stood in the name of one Crawford. Moreover, the record affirmatively shows that on the occasion of the accident the offending car was not being operated by Spease, but by one Lonnie Lowrance, and that, instead of being operated from the Red Ball Station on North Alamo street, as stipulated in the insurance policy, was operated from the Union Bus Lines, on West Travis street. No attempt was made upon the trial to show that Lowrance used the car as Spease's agent or employee, or with his knowledge or consent; on the contrary, the record at large negatives this fact. We have gone into the facts in detail, not as bearing so much upon the merits of the whole case as upon appellant's first application for a continuance, which was overruled. This application was grounded upon the absence of Spease's testimony. Appellant alleged the materiality of that testimony, which is obvious; that appellant had used due diligence to locate Spease for the purpose of securing his testimony, as well as the facts showing the diligence claimed, and set out the facts expected to be proven by the witness.

[1] It was further alleged in the application, and does not appear to have been denied, that—

"It (appellant) has cited F. C. Spease to appear and answer as a defendant in this cause, and has asked process to be served on said F. C. Spease, and has inquired of plaintiff and plaintiff's attorneys as to the whereabouts of the said F. C. Spease, and plaintiff and plaintiff's attorneys, admitting that they know the whereabouts of the said F. C. Spease, have refused to divulge same to this defendant."

It is unnecessary to decide that the application was sufficient as a matter of law, and that, in overruling the application, the court abused the rather wide discretion accorded trial courts in such matters; but we do conclude that the evidence adduced upon the trial rendered it incumbent upon the court to grant a new trial on account of the ruling upon the application for continuance.

[2] On the day of the accident, the car in which Miss Jureski was injured was parked at the Union Bus Station, on West Travis street, and not at the Red Ball Station, on North Alamo street, from which, under the terms of the insurance policy, it was required to operate. It was from the Union Station, in response to Miss Jureski's call, that the car was sent out for her. It was not driven by Spease, the insured, who, apparently from the record, had ceased to operate a bus service, but by one Lonnie Lowrance. Lowrance did not testify upon the trial, nor was his connection with the matter known to appellant, but was known to appellee, who did not disclose it until the trial was actually in progress. It was then too late to procure his attendance at the trial, although appellant at once made diligent search for him, and did in fact locate him in Houston a few days later, after the conclusion of the trial and rendition of the judgment here appealed from. Appellant then procured his affidavit of the facts of the transaction, set up the facts, and attached the affidavit to its motion for new trial, to show newly discovered evidence. The affidavit is as follows:

"My name is Lonnie Lowrance, I make this as my true and voluntary statement.

"On or about October 2, 1925, I dropped into the Union Bus Station. Shortly before this time I worked on a switchboard on the night shift, checking in busses and passengers. I did not drive any bus for any one at any time, out of either the Red Ball or the Union Bus Station; on that day, October 2, 1925, I was in the Union Bus Station about 1 p. m., when a call came in to the station for the Bandera bus driver. The call came in from a passenger who wished to go to Bandera. The regular driver of the Bandera bus line was busy checking baggage. When the call came in from the Bandera passenger, he asked me to go back and take a car and go out beyond Labor street, and some three or four blocks south of Goliad and bring

this passenger, who was a girl friend of his, to the bus station. The car being used as a regular Bandera bus was not in the station at this time, but was being repaired for preparation for making the run. I took a Nash touring car to go after the passenger on this catch call. It belonged to a man named C. Clay, who was driving this Nash and a Studebaker on the Cotulla run. I took this car at the request of the Bandera bus driver. The regular bus to Bandera was a Buick sedan.

"I do not know F. C. Spease. I have never known a man by that name, and I have never driven a car for any such person. I did not drive on this trip by any request of Mr. F. C. Spease. I have never heard of a man by that name. This was the first and only time I ever drove this Nash touring car, and I drove the car on this call at the request of the regular Bandera bus driver, who asked me to go to the rear of the Union Bus Station and take some car and bring his friend, May Jureski, to the station in time to make connection for the Bandera bus, which was in a garage having some minor repairs made on it. The driver of the Bandera bus was not named Spease, and the name of Spease was not mentioned in any connection in my hearing that day.

"When the accident occurred, I was going north on Labor to turn west on Goliad, and was about the center of Goliad street, when the car driven by the negro headed into the car I was driving. The negro was driving an old Dodge touring car, and had turned as if to go south into Labor. Miss Jureski was riding in the front seat with me at the time of the accident."

This unusual circumstance resulted in Lowrance, a bystander, making the call at the instance and for the accommodation of a stranger to the insurer and insured, using this car, apparently then owned by a stranger to this litigation, for the purpose. These facts, if established to the satisfaction of court or jury, would relieve appellant of liability, since they show the car to have been the property of another than Spease, the insured, and to have been driven at the time, not by Spease or his agent or employee, but by a total stranger to him and without his knowledge or consent. We think it clear that under the unusual facts of the case the trial court abused its discretion, if not in refusing the application for continuance, then certainly in not granting appellant's motion for new trial. If in a fully developed case appellee is entitled to recover, she will not be materially injured by another trial; whereas, if in such trial appellant would be entitled to recover, then it would be irreparably injured by an affirmance.

Appellant vigorously contends that under the evidence actually adduced, and even in the absence of the testimony of Spease, the insured, and Lowrance, the driver of the car causing the injuries complained of, appellee failed to show liability upon appellant. However, we refrain from deciding or further discussing these contentions or the sufficiency

of the evidence adduced, in view of another trial. Numerous other questions are presented in the appeal, but need not be discussed or decided.

The judgment is reversed, and the cause remanded.